SUGG, Presiding Justice,
for the Court:
The appellant, Crossley, was tried in the Circuit Court of Montgomery County on a charge of capital murder. The circuit judge dismissed the case relating to the underlying felony due to the insufficiency of the evidence to establish that a robbery occurred. The case was submitted to the jury on the alternative instructions of murder and as an accessory before the fact. The jury returned a verdict of guilty of murder and the defendant appeals.
STATEMENT OF THE FACTS
Crossley and his traveling companion, Arthur Lee Gentry, were from Orange, Texas and had been to Chicago to visit Crossley’s relatives. They were returning to Texas and stopped in Winona, Mississippi at a gas station. The car they drove was leased in Crossley’s name, a new orange over white Thunderbird, 1980; Crossley was a passenger at the time. Two witnesses who were in route to Oxford, Mississippi from Winona saw Crossley and the car at the station in question between 10:45 and 11:00 p.m. on Sunday, April 20, 1980. They stated that he appeared sleepy and inquired about where he was. Jerry Grice was the station attendant. Each of the two witnesses had known Grice casually and testified that he was present and alive when they left the station; they saw no one else other than Grice and Crossley.
A third witness who made a turn through the station between 10:45 and 11:00 p.m. testified that she saw two black males standing inside the station facing out the glass door toward the highway. She could not identify Crossley as either of the men she saw that night. It could not be determined whether she had entered the driveway of the station before or after a fourth witness heard a shot fired and watched a black male run from the station. The fourth witness was across the street standing behind a van, therefore, his view of the station was blocked; however, he did see a light colored, late model car leave the station in the same direction as the man had run just moments before.
A phone call was received by the local police dispatcher from Jerry Grice who reported a robbery and a shooting. The first policeman to arrive found Grice shot and bleeding. Grice could not speak clearly and could not breathe regularly, but he told the policeman that a white and orange car and two black males had been there. A highway patrolman had arrived at this time and proceeded to dispatch the information gathered at the scene. Highway patrolmen between Canton and Jackson, Mississippi stopped and arrested Crossley and Gentry. Consent was given by Crossley for search of the car. A .32 caliber pistol was found behind the console of the car where some *1378 felt appeared to be sticking out. The accounts differ here but a highway patrolman testified that Crossley at first denied any knowledge of the weapon. One box of .32 caliber bullets was found in the trunk of the car. Only one shot had been fired from the pistol. Crossley and Gentry were handcuffed, and one of the highway patrolmen wrapped their hands with plastic bags.
Crossley waived counsel at the site of his arrest and later at the Madison County jail. He made a statement in which he denied having shot anyone. He claimed he was asleep in the car when it arrived in Winona and that he had only stepped out of the car long enough to stretch when he heard a shot and began to run. He stated that his companion, Gentry, picked him up shortly thereafter without discussing any details about what had occurred at first, but later saying that he and the attendant, “had got into it,” when the attendant had reached for a rifle. A .22 caliber rifle was at the station between the cash register counter and the wall. The record did not establish who owned the rifle, but the jury was left to surmise that it belonged to Jerry Grice. Grice’s empty wallet and some personal belongings were on the counter next to the cash register. Swabbings were made of Crossley’s hands as well as Gentry’s. Standard kits were used and the evidence was preserved for future reference with plastic bags and identification tags which established the chain of custody. The swabbings were sent to the F.B.I. for neutron activation analysis.[1] When Grice died at 12:15 a.m. on April 21, 1980, one bullet was removed and preserved for evidence. A ballistics test was carried out on the .32 caliber pistol.
At trial it was shown that Crossley and Gentry were in the vicinity at the time in question, that Crossley’s pistol had fired the fatal shot, that the car which Crossley had leased matched the description given by witnesses who had seen it, and that amounts of barium and antimony were found on Crossley’s hands in sufficient or greater amounts to indicate that he had either fired a pistol, or had been standing very near when one had been fired, or had handled the pistol after it was fired.
Crossley admitted that he owned the pistol for protection, that Gentry knew where the pistol was in the car, and that he had handed Crossley the pistol after the shooting at Crossley’s insistence. It was agreed that merely handling a recently fired weapon would leave deposits of barium and antimony if the ammunition fired contained it, but it was never explained why Crossley had twice the amount of barium and antimony on his hands than Gentry.
ASSIGNMENTS OF ERROR
I
The Court erred in failing lawfully to arraign Appellant on the charge of capital murder before putting him to trial.
The complaint here is that Crossley was not arraigned during term time. The October term of court in Montgomery County begins on the second Monday of October. Section 9-7 — 19 Mississippi Code Annotated (1972). Crossley’s arraignment was held on October 3, 1980 after an indictment by the grand jury had been returned, and after he had been served with a copy of the indictment. On the advice of counsel, Crossley did not reply to any of the charges in the indictment. Crossley argues that unless he, personally, entered a plea at arraignment, the case will have to be reversed and retried. However, a defendant who stands mute in response to charges read to him by the court will have a plea of “not guilty” entered for him by the court. Section 99-15-23 Mississippi Code Annotated (1972).
*1379 Crossley also attempts to rely upon this Court’s decision in Alexander v. State, 226 So.2d 905 (Miss.1969) where a defendant stood mute and his attorney entered a plea of guilty on his behalf. This Court reversed the conviction on the ground that the plea of guilty was not intelligently and understandingly entered. The defendant was illiterate and the state made no showing that he understood what he was doing.
Crossley stood mute on advice of counsel due to the possibility that the arraignment might be improper and any pleas entered might constitute a waiver. In the companion case, Gentry v. State, 416 So.2d 650 (Miss.1982) Gentry assigned as error his arraignment in vacation over his objection. We disposed of Gentry’s contention in the following language:
Appellant first assigns as error his arraignment during vacation over his objection. He contends his conviction and sentence should be set aside so that he might be properly arraigned during a court term and retried.
Assuming, arguendo, arraignment was improperly held during vacation, the appellant has not demonstrated wherein he was prejudiced in any manner by being arraigned in vacation on a day designated by the court for arraignments and motions. (416 So.2d at 651)
Our decision in Gentry is in accord with the language of the United States Supreme Court in Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914). In that case, Garland was not arraigned, but his conviction was affirmed, the Court holding that Garland had waived his arraignment. The Court stated:
Due process of law, this court has held, does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Rogers v. Peck, 199 U.S. 425,435, 50 L.Ed. 256, 260, 26 Sup.Ct.Rep. 87, and previous cases in this court there cited. Tried by this test it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage. All requirements of due process of law in criminal trials in a state, as laid down in the repeated decisions of this court, were fully met by the proceedings had against the accused in the trial court. The objection was merely a formal one, was not included in the general language in which the objection to the introduction of evidence was interposed before the trial, and was evidently reserved with a view to the use which is now made of it, in an attempt to gain a new trial for want of compliance with what in this case could have been no more than a mere formality. (232 U.S. at 645, 34 S.Ct. at 457, 58 L.Ed. at 775)

Technical objections of this character were undoubtedly given much more weight formerly than they are now. Such rulings originated in that period of English history when the accused was entitled to few rights in the presentation of his defense, when he could not be represented by counsel, nor heard upon his own oath, and when the punishment of offenses, even of a trivial character, was of a severe and often of a shocking nature. Under that system the courts were disposed to require that the technical forms and methods of procedure should be fully complied with. But with improved methods of procedure and greater privileges to the accused, any reason for such strict adherence to the mere formalities of trial would seem to have passed away. (232 U.S. at 646, 34 S.Ct. at 457, 48 L.Ed. at 775)
Although Crossley objected specifically to his arraignment in vacation, we are of the opinion that he was not prejudiced by the arraignment in vacation on a day set by the trial court for arraignments. Crossley does not contend that he was precluded *1380 from raising any defense at his trial or that he was otherwise prejudiced by the fact that the arraignment was held when it was. Crossley was served • with a copy of the indictment so he had actual notice of the crime with which he was charged and adequate opportunity to defend himself.
As the Court noted in Garland, technical objections of this character were given more weight formerly than they are now because the accused was entitled to few rights in presenting his defense. Under our modern system an accused may testify in his own behalf, is entitled to compulsory process to compel the attendance of witnesses, and counsel is provided if he is financially unable to afford counsel. Any reason for strict adherence to mere formalities have long since disappeared.
We find no merit in this assignment of error and hold that an accused may be arraigned in vacation so long as the arraignment is publicly conducted in the place designated for holding court.
II
The court erred in overruling defendant’s motion for change of venue.
Crossley and Gentry were both indicted for capital murder arising out of the death of Jerry Grice. Each defendant made a motion for a change of venue and by agreement both motions were heard together. We discussed in detail the evidence on the motions in Gentry v. State, 416 So.2d 650 (Miss.1982) and held that Gentry was not entitled to a change of venue. No useful purpose would be served by repeating what we said in Gentry and adhere to our holding there.
III
Crossley’s remaining seven assignments of error are combined in the third proposition of his brief and relate to the nature and adequacy of the evidence presented against him.
Crossley first maintains that the “Weathersby Rule” applies since there were no witnesses to the shooting. Crossley claims he did not see the actual shooting and did not enter the building where the shooting took place. In Griffin v. State, 293 So.2d 810 (Miss.1974), the defendant allegedly never woke up during an attack by his brother upon the victim. This was testified to by the defendant’s brother, and was uncontradicted by- the state.
Crossley claims he never entered the station and stated he merely got out of the car, stretched, heard a shot and instinctively ran. The state put on a witness who drove through the driveway of the station on the night in question at approximately 10:45 p.m. and saw two black males inside the station. The witness did not see any other person at the scene and there is no evidence in the record to show that any other black males were on the premises at that time or near the time in question. The witness’ testimony that there were two black males inside the building contradicts Crossley’s claim that he never went inside the station that night. The evidence offered by the state contradicts the testimony of Crossley so the Weathersby Rule does not apply.
Crossley also contends that the evidence was not sufficient to support his conviction either as the person who fired the shots that killed Grice or as an accessory before the fact.[2] The state’s primary theory at the trial was that Crossley actually fired the fatal shot that killed Grice. The state prosecuted alternatively on the theory that Crossley was an accessory before the fact. It was permissible for the state to prosecute in the alternative, because wheth *1381 er Crossley was a trigger man or whether he aided and abetted the trigger man he could be indicted and tried as the principal. Scales v. State, 289 So.2d 905 (Miss.1974).
The evidence established that Cross-ley and Gentry had been traveling together through several states in a car rented by Crossley, that they were the only persons present at the scene when Grice was killed, that a pistol belonging to Crossley was the weapon used to shoot Jerry Grice, that Crossley and Gentry fled after the shot was fired, that Crossley was arrested while riding as a passenger in that car, that the pistol was hidden in the console of that car, that Crossley denied any knowledge of the weapon when he was arrested, and that Crossley had sufficient amounts of barium and antimony on his hands either to have recently fired a pistol or to have handled a recently fired pistol. The analysis of swabs taken from Crossley’s and Gentry’s hands by the process of neutron activation carried out by the F.B.I. also established that the amount of residue on Crossley was twice the amount found on Gentry’s hands.
Crossley also argues that malice was not proved so his requested peremptory instruction should have been granted.
In Smith v. State, 205 Miss. 283, 38 So.2d 725 (1949) held that, if the proof shows an intentional use of a deadly weapon and death results and no other facts are proven, then the law presumes malice from the use of a deadly weapon. A pistol, even if not loaded or capable of being fired, is a deadly weapon. Corley v. State, 264 So.2d 384 (Miss.1972). Both Smith v. State, supra, and Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961) base their holding of malice being implied when a deadly weapon is used upon section 2215 of the Mississippi Code Annotated (1942). This section is now embodied without alteration in section 97-3-19(1) Mississippi Code Annotated (Supp. 1981). Section 97-3-19(2) was added in order to define capital murder. It went into effect on April 23, 1974 and in no way altered the interpretation of the previous homicide statute other than to specify those acts of homicide for which death could be the penalty. Therefore, there is ample evidence from which a jury could have found Crossley guilty of murder since the use of a deadly weapon supplies the element of malice.
The other evidence was circumstantial but sufficient to support the jury verdict.
From a careful study of the entire record, we hold that the evidence was sufficient to support the verdict of the jury.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.

. See 50 A.L.R. 3118 for annotation on Neutron Activation Analysis, and 15 Am.Jur. 115 Proof of Facts.

. Section 97-1-3—Accessories—before the fact.
Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not,.