# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01779-SCT

*GLYNN STEVENS*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHN |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/28/2002 |
| MOTION FOR REHEARING FILED: | 11/29/2001 |
| MANDATE ISSUED: | 3/7/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. Glynn Stevens appeals his conviction for manslaughter in the Circuit Court of Hinds County, First Judicial District. Initially, Stevens and two co-defendants were indicted for murder and aggravated assault. Stevens pled guilty to aggravated assault and received a sentence of seven years in the custody of the Mississippi Department of Corrections. Stevens and the two co- defendants were tried together for murder. Stevens was convicted of manslaughter and his co-defendants of murder. Stevens appealed his conviction, and this Court reversed and remanded for a new trial on the ground that Stevens's trial should have been severed from that of his co-defendants. *Stevens v. State*, 717 So. 2d 311 (Miss. 1998) (hereinafter *Stevens I*). Stevens was indicted a second time and again convicted of manslaughter. The Honorable James E. Graves, Jr. sentenced Stevens to a term of twenty years in prison. Stevens timely appealed his conviction to this Court.

## FACTS

¶3. This case arises from the April 28, 1995, shooting death of seventeen-year-old Jason Brown and the aggravated assault of Patrick Holiday. The record reflects that the appellant, Glynn Stevens, accompanied Patrick Cavett, Robert Strahan, and Calvin Shelton to the Metrocenter Mall on the evening in question with the intent of stealing an automobile. Upon their arrival at the mall parking lot, the four decided to steal Brown's Chevrolet Malibu. Brown and Holiday left the parking lot in Brown's Malibu with Brown driving

and Holiday in the passenger seat. Stevens, Cavett, Strahan, and Shelton followed in a Mercury Cougar driven by Cavett. Stevens was riding in the front passenger seat, and Shelton and Strahan were in the backseat.

¶4. The four occupants in the Mercury followed Brown's Malibu along several streets in West Jackson, flashing their lights, still intent on stealing the car. Strahan testified that they eventually decided against stealing the Malibu and ceased following the Malibu, planning instead to go to a party. Nevertheless, when Brown stopped at a traffic light, the Mercury, coincidentally according to Strahan, pulled up behind Brown's Malibu in the lane to the left of the Malibu.

¶5. Holiday got out of the Malibu, walked around the back of the Malibu, and approached the Mercury. Holiday asked why the four occupants were following them. Strahan testified that he waved an unloaded .38 caliber pistol at Holiday, who was unarmed, and instructed Holiday to get away from the car. Strahan stated that Holiday began backing up and running toward the Malibu. According to Strahan, Stevens began firing a .22 caliber revolver, and Cavett fired a 9 millimeter automatic. Shelton, who did not have a gun, never fired. Holiday testified that he saw Stevens and Cavett, the occupants of the front seat, shooting. Holiday also testified that one of the occupants of the backseat was shooting, though his testimony was confused as to where the two occupants on the backseat were sitting.

¶6. As he was running back to the Malibu, Holiday was shot in the leg. During the shooting, Brown remained in the car, and he was shot in the head. Brown died after Holiday drove him to University Hospital.

¶7. Because the bullet could not be removed from Holiday's leg, whose gun fired the bullet could not determined. However, the transcript from Stevens's plea hearing on the aggravated assault charge contains Stevens's testimony that he shot Holiday with a .22 caliber pistol. The projectile removed from Brown's head indicated that he was shot with either a .38 or a 9 millimeter. John Dial, accepted as an expert in firearms examination and ballistics, testified that the projectile from Brown's head could not have been from a .22 caliber pistol. On August 8, 1995, Stevens, Shelton, Cavett, and Strahan were indicted for Brown's murder. *Stevens I*, 717 So. 2d at 312. Stevens pled guilty to the aggravated assault of Holiday on August 12, 1995, and he received a sentence of seven years, to run consecutively to any sentence received on the manslaughter charge. Stevens, Cavett, and Strahan were tried together for Brown's murder, and Shelton testified against them. *Id.* at 312. On February 23, 1996, the jury found Stevens guilty of manslaughter, and he was sentenced to twenty years in prison. *Id.* Stevens appealed his conviction to this Court, and on July 23, 1998, this Court reversed Stevens's conviction and remanded for a new trial on the grounds that Stevens's trial should have been severed from that of his co-defendants. *Id.* at 313.

¶8. It is here that the procedural posture of this case diverges from the norm. On July 6, 1999, the original date scheduled for Stevens's second trial, the only indictment in existence was the original indictment which charged Stevens with murder. As stated previously, Stevens was convicted at the first trial of the lesser offense of manslaughter. Though this Court reversed that conviction and remanded for a new trial, because Stevens was necessarily acquitted of the murder charge during the first trial, the State was unable to pursue for a second time a conviction on the murder charge. Necessarily, the State was relegated to seek a conviction of the lesser offense.

¶9. On July 6, 1999, the date originally set for Stevens's retrial, Stevens argued for the first time that the indictment did not give him notice of the manslaughter statute pursuant to which the State was seeking to

convict him. The trial court denied Stevens's motion to dismiss the indictment, but granted Stevens's request for a continuance. Though the trial court did not order the State to do so, the State obtained a second indictment, charging Stevens with manslaughter pursuant to Miss.Code Ann. § 97-3-27, filed August 12, 1999. On September 7, 1999, the second date set for trial, Stevens filed a motion to dismiss the second indictment. The trial court again denied the motion.

¶10. Stevens's trial began September 7, 1999, before Hinds County Circuit Court Judge James E. Graves, Jr. The trial court denied Stevens's motion for directed verdict at the close of the State's case-in-chief. Stevens put on no evidence of his own, and his renewed motion for directed verdict was denied by the trial court, as was his request for a peremptory instruction. The jury found Stevens guilty of manslaughter, and Stevens was sentenced to twenty years in prison. On October 12, 1999, the trial court denied Stevens's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

¶11. Aggrieved, Stevens timely appealed to this Court on October 21, 1999. He raises the following issues:

**I. THE TRIAL COURT ERRED IN DENYING STEVENS'S MOTION TO DISMISS FOR FAILURE TO GRANT A SPEEDY TRIAL.**

**II. THE TRIAL COURT ERRED IN DENYING STEVENS'S DEMURRER TO THE INDICTMENT.**

**III. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1.**

**IV. THE VERDICT OF THE JURY WAS UNSUPPORTED BY THE EVIDENCE, AND THE TRIAL COURT ERRED IN DENYING STEVENS'S PEREMPTORY INSTRUCTION AND MOTION FOR DIRECTED VERDICT.**

**V. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-5.**

**VI. THE TRIAL COURT ERRED IN GRANTING CONFLICTING JURY INSTRUCTIONS, S-1 AND D-6.**

**VII. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-18.**

**VIII. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A PHOTOGRAPH OF THE VICTIM.**

**IX. THE TRIAL COURT ERRED IN ADMITTING THE AUTOPSY PHOTOGRAPH OF BROWN'S HEAD.**

**X. THE TRIAL COURT ERRED IN REFUSING TO ALLOW STEVENS TO QUESTION WITNESSES CONCERNING STRAHAN'S EXERCISING HIS RIGHT TO REMAIN SILENT.**

**XI. THE TRIAL COURT ERRED IN REFUSING TO STRIKE TESTIMONY CONCERNING THE BULLET RECOVERED FROM HOLIDAY'S LEG.**

## DISCUSSION

## I. THE TRIAL COURT ERRED IN DENYING STEVENS'S MOTION TO DISMISS FOR FAILURE TO GRANT A SPEEDY TRIAL.

¶12. Stevens argues that the trial court erred in denying his motion to dismiss for violation of his constitutional right to a speedy trial as secured by the Sixth and Fourteenth Amendments to the United States Constitution and Art. 3, § 26 of the Mississippi Constitution. Stevens points to the fact that the mandate from *Stevens I*, reversing his original conviction and remanding for a new trial, was issued on August 17, 1998, and that his retrial did not commence until September 7, 1999--some 386 days later.

¶13. Stevens filed a demand for speedy trial on December 18, 1998, and he filed a motion to dismiss for failure to grant a speedy trial on July 2, 1999. On July 6, 1999, the day originally set for trial, the trial court conducted a hearing on the motion to dismiss. In denying Stevens's motion, the trial judge stated that any delay was caused by the fact that he had been involved in trials from February 16, 1999, through June 23, 1999, and that there was no evidence that the State sought to gain any tactical advantage by the delay. The trial judge found that the delay was not unreasonable and also noted that Stevens was incarcerated through November 5, 1998, on the sentence for aggravated assault.

¶14. Miss.Code Ann. § 99-17-1 (2000) requires that an accused be brought to trial within 270 days of his indictment unless there is good cause for a delay. However, the 270-day rule does not apply to retrials; therefore, Stevens is relegated to the constitutional speedy trial standards. *See Mitchell v. State*, 572 So. 2d 865, 870 (Miss. 1990) (citing *Kinzey v. State*, 498 So. 2d 814 (Miss. 1986)).

¶15. Stevens argues that *Mitchell* and *Kinzey* do not apply because neither involved a defendant who was reindicted prior to the second trial. However, Stevens also refuses to accept technical application of the 270-day rule in the event that *Mitchell* and *Kinzey* do not apply, presumably because application of the 270-day rule in this case would result in the rejection of Stevens's allegation of error because the second indictment was issued less than one month before trial. Rather, Stevens urges this Court to apply the intent or spirit of the 270-day rule as a measure of the State's failure to grant a speedy trial.

¶16. This Court has stated that if a case is reversed on appeal for retrial, the time for retrial becomes a matter of discretion with the trial court to be measured by the constitutional standards of reasonableness and fairness under the constitutional right to a speedy trial as enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Carlisle v. State*, 393 So. 2d 1312, 1314 (Miss. 1981). In *Barker*, the United States Supreme Court announced a four-part balancing test to be applied on a case-by-case basis: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. This Court has recognized that:

> No mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.

*DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998) (quoting *Beavers v. State*, 498 So. 2d 788, 790 (Miss. 1986), *overruled on other grounds, State v. Ferguson*, 576 So. 2d 1252, 1255 (Miss. 1991)).

¶17. The following chronology is helpful in analyzing this issue:

> May 5, 1995 Arrested and Incarcerated.

Aug. 8, 1995 Original indictment issued.

Aug. 12, 1995 Stevens enters guilty plea to aggravated assault on Patrick Holiday. Receives seven-year sentence.

Feb. 20-23, 1996 First trial. Stevens is convicted of manslaughter.

July 23, 1998 Stevens's conviction for manslaughter reversed and remanded for new trial.

Aug. 17, 1998 Issuance of the mandate in *Stevens I*.

Nov. 5, 1998 Stevens allegedly flat-times his sentence for aggravated assault.

Dec. 18, 1998 Stevens files demand for speedy trial.

July 2, 1999 Stevens files motion to dismiss for failure to have speedy trial.

July 6, 1999 Original trial date. Hearing on motion to dismiss - denied. Continuance granted.

Aug. 12, 1999 Second indictment issued.

Sept. 7, 1999 Second trial.

### 1. Length of Delay

¶18. The speedy trial clock begins to run for purposes of determining a violation of a defendant's right to speedy retrial on the date this Court reverses his first conviction. *Duplantis v. State*, 708 So. 2d 1327, 1334 (Miss.1998) (citing *State v. Ferguson*, 576 So. 2d 1252, 1254 (Miss. 1991)). The speedy trial clock began to run in this case on August 17, 1998, the date of the issuance of the mandate in *Stevens I*. *See Duplantis*, 708 So. 2d at 1334 (clock runs from issuance of mandate). Stevens was not retried until September 7, 1999, 386 days after the court's reversal. This was a delay of more than 12 months. A delay of eight months or longer is presumptively prejudicial. *Simmons v.. State*, 678 So. 2d 683, 686 (Miss.1996). This factor must be weighed in favor of Stevens. However, presumptive prejudice alone is insufficient to allow the defendant to prevail on speedy trial grounds. *Hurns v. State*, 616 So. 2d 313, 317 (Miss.1993) (citing *Doggett v. United States*, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). It merely mandates that this Court examine the remaining factors that go into the balance. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. 2. Reason for Delay

¶19. Once this Court finds the delay presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay. *See Humphrey v. State*, 759 So. 2d 368, 375 (Miss. 2000); *Ferguson*, 576 So. 2d at 1254. At the hearing on Stevens's motion to dismiss, the prosecution argued that the delay was caused by the fact that the court had been involved in two lengthy civil trials since February 1999. The trial judge confirmed that he had been in trial from February 16, 1999, through June 23, 1999.

¶20. A neutral reason such as overcrowded courts should be weighted less heavily than would a deliberate attempt to hamper the defense, but nevertheless should be considered since the ultimate responsibility of the State for such circumstances rests with the government rather than the defendant. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. As a general rule, delays resulting from docket congestion are to be

weighed against the State, but not heavily. *Skaggs v. State*, 676 So. 2d 897, 901 (Miss. 1996); *Adams v. State*, 583 So. 2d 165, 169 (Miss. 1991).

¶21. Nevertheless, if the State can positively demonstrate that the backlog actually caused the delay, then the trial court's denial of a defendant's motion to dismiss may be proper since docket congestion can constitute "good cause" for delay. *McGee v. State*, 608 So. 2d 1129, 1133 (Miss. 1992). In the case at hand, though the trial judge stated he had been in trial from February 1999 through June 1999, the record does not reflect that the docket for the entire circuit court was previously filled with other cases during this period, nor does it reflect that the docket was full for the months prior to February 1999. Furthermore, though the record from the pretrial hearing contains references by the prosecutor and trial judge to continuances granted for this reason, the record contains no such continuances. This factor must weigh slightly against the State. However, we also observe that there is no indication that the State purposefully delayed the trial or that it sought to gain any tactical advantage by the delay.

### 3. Assertion of Right to a Speedy Trial

¶22. The State bears the burden of bringing a defendant to trial in a speedy manner. *Sharp v. State*, 786 So. 2d 372, 381 (Miss. 2001); *State v. Magnusen*, 646 So. 2d 1275, 1283 (Miss. 1994). "Although the defendant has neither a duty nor an obligation to bring himself to trial, points are placed on his side of the ledger when, as here, he has made a demand for a speedy trial." *Magnusen*, 646 So. 2d at 1283. In the case at hand, Stevens demanded a speedy trial on December 18, 1998, and filed a motion to dismiss on July 2, 1999, four days prior to the original date set for trial. This factor weighs in favor of Stevens.

### 4. Prejudice to the Defendant

¶23. Stevens does not bear the burden of proving actual prejudice in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant. *State v. Ferguson*, 576 So. 2d 1252, 1254 (Miss. 1991). However, if the defendant fails to make a showing of actual prejudice to his defense, this prong of the balancing test cannot weigh heavily in his favor. *Polk v. State*, 612 So. 2d 381, 387 (Miss. 1992).

¶24. This Court has explained that prejudice to the defendant may manifest itself in two ways. *Duplantis*, 708 So. 2d at 1336. First, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety. *Id*. Second, the delay may actually impair the accused's ability to defend himself. *Id.*

### *1. Did Stevens suffer unreasonable restraints to his liberty as a result of the delay?*

¶25. By Stevens's own admission, he would have been in prison until at least November 5, 1998, serving his sentence for the aggravated assault. This Court indicated in *Duplantis* that a defendant cannot complain of restrictions on his liberty interests which occur during the time in which he was serving another sentence. *Id.* at 1336. Thus, Stevens remained in prison precisely eight months solely awaiting the initial date set for his trial and ten months awaiting the ultimate trial date.

¶26. Stevens testified at the hearing on the motion to dismiss that he received threats from another inmate while in prison which caused him anxiety. While this Court has never stated that such concern and anxiety are to be dismissed without consideration, it has held that "anxiety alone does not amount to prejudice worthy of reversal." *Id.* at 1336.

### *2. Did the delay actually impair Stevens's ability to defend himself?*

¶27. The Supreme Court in **Barker** stated that the possibility that the defense will be impaired is the most important of the interests named above. **Barker**, 407 U.S. at 532, 92 S.Ct. at 2182. Though Stevens testified at the pretrial hearing regarding concerns and anxiety he faced in prison during this period, he made absolutely no showing that the delay in any way impaired his defense, and his argument to this Court contains no such allegation. In **Kolberg v. State**, 704 So. 2d 1307 (Miss.1997), this Court indicated that there must be a showing of prejudice to an extent that the defendant could not defend against the charge, stating:

> Kolberg does not claim that because of the delay witnesses scheduled to testify for the defense disappeared or that any evidence was lost or destroyed or any actual prejudice was incurred. There is no showing of Kolberg being prejudiced to an extent that he could not defend against the charge, nor is there any indication that the State engaged in oppressive conduct.

*Id.* at 1319.

¶28. Stevens does not allege that the delay in any way impaired his defense. Considering Stevens's failure to allege any impairment to his defense and the fact that nearly four months of Stevens's incarceration was due to his conviction of aggravated assault, this factor weighs in favor of the State.

¶29. This Court has stated that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim. **Duplantis**, 708 So. 2d at 1336 (citing **Perry v. State**, 637 So. 2d 871, 876 (Miss. 1994)). Upon examination of these four factors and in consideration of the totality of the circumstances, the balance in this case supports the State's contention that Stevens was not denied his constitutional right to a speedy trial. The trial court did not abuse its discretion in rejecting Stevens's motion to dismiss. Accordingly, this assignment of error is without merit.

## II. THE TRIAL COURT ERRED IN DENYING STEVENS'S DEMURRER TO THE INDICTMENT.

¶30. Stevens argues that the indictment was constitutionally inadequate to inform him of the nature and cause of the accusation against him. An indictment must contain a plain, concise and definite written statement of the essential facts constituting the offense charged, and it must fully notify the defendant of the nature and cause of the accusation against him. URCCC 7.06. *See also* **State v. Hoffman**, 508 So. 2d 669, 671 (Miss. 1987) (citing URCCC 2.05, predecessor of URCCC 7.06); **Winston v. State**, 479 So. 2d 1093, 1094 (Miss. 1985)).

¶31. Stevens was indicted for manslaughter pursuant to Miss.Code Ann. § 97-3-27 (2000), which provides:

> The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except those felonies enumerated in Section 97-3-19(2)(e) and (f),[1] or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.

The indictment charged that Stevens, "acting in conjunction with others, ... did wilfully, unlawfully and feloniously kill and slay Jason Brown, a human being, without malice, but not in necessary self-defense, while he, the said Glynn Stevens and others were then and there engaged in the perpetration of the felony crime of aggravated assault of Patrick Holiday...." As a general rule, where an indictment tracks the language of a criminal statute it is sufficient to inform the accused of the charge against him. *Ward v. State*, 479 So. 2d 713, 714 (Miss. 1985) (citing *Hickombottom v. State*, 409 So. 2d 1337 (Miss.1982); *Anthony v. State*, 349 So. 2d 1066 (Miss. 1977); *State v. Labella*, 232 So. 2d 354 (Miss. 1970)).

¶32. Stevens argues that the indictment should have been dismissed for two reasons. First, Stevens argues that because the indictment stated that Stevens killed Brown while Stevens "and others" were engaged in the crime of aggravated assault and did not state the names of the "others," the indictment failed to adequately inform him of the nature of the accusation against him. Second, Stevens argues that the indictment should have been dismissed because it did not enumerate the elements of aggravated assault. Both arguments are without merit.

¶33. Stevens submits *Umphress v. State*, 295 So. 2d 735 (Miss.1974), as controlling authority for his assertion that the indictment was insufficient because it did not list the names of "the others." The indictment in Umphress charged the defendant with delivering a controlled substance, but did not designate the person to whom delivery of the substance was made, nor did it specify the time or place of the crime. *Id.* at 736. This Court held that the indictment was insufficient to place the defendant on notice of the charges against him. *Id.* The Court explained, "There is no logical way [Umphress] could determine which of the charges arising on a particular day that he was being tried under." *Id.* at 736-37. Stevens argues that just as the defendant in *Umphress* needed to know the person to whom he purportedly delivered the controlled substance, Stevens needed to know the names of the "others" with whom he was accused of committing the aggravated assault.

¶34. Unlike the indictment in *Umphress*, the indictment in the case sub judice states the date and place of the alleged crime and specifically names both victims. The indictment clearly states the charge and gives sufficient descriptive facts to put Stevens on notice of the accusation against him. Noteworthy is the fact that all seven requirements of URCC 7.06 are met by the indictment, and it reasonably provides Steven with actual notice of the charge against him, to wit: manslaughter pursuant to § 97-3-27. See *Holloman v. State*, 656 So. 2d 1134, 1139 (Miss. 1995) (stating that an indictment is sufficient if it meets these requirements). Though an indictment must sufficiently apprize a defendant of what he must be prepared to meet, this Court has never stated the indictment must specifically set out the proof necessary for a conviction. Furthermore, the record indicates that Stevens was well apprized of the identification of the "others," particularly in light of the fact that they were initially indicted and tried together.

¶35. Stevens also complains that the indictment should have been dismissed because it did not enumerate the elements of aggravated assault. Stevens argues that without having been informed of the elements of aggravated assault which the State sought to prove at trial, he was unable to adequately prepare his defense. Miss.Code Ann. § 97-3-7(2) (2000), the aggravated assault statute, provides in pertinent part:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious

bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years.

This Court noted in *Ward v. State*, 479 So. 2d 713, 715 (Miss. 1985), that this statute may be used to cover "varying factual situations of considerable latitude." The indictment did not contain a reference to the above statute. However, this Court has stated that aggravated assault has an easily ascertainable statutory definition, and the label "aggravated assault" gives a defendant reasonable notice of what he is charged with even without the code section number. *Harbin v. State*, 478 So. 2d 796, 798 (1985) (citing *Jones v. State*, 461 So. 2d 686, 692-94 (Miss. 1984)). Stevens does not complain of the failure of the indictment to reference § 97-3-7, but takes issue only with the indictment's failure to specify the particular subsection, (2)(a) or (2)(b).

¶36. Because Stevens was charged not under a specific single subsection of § 97-3-7(2), it necessarily follows that he was charged under both subsections comprising that section. Stevens was therefore put on notice that he was being charged with aggravated assault under both subsections, i.e., by causing injury under circumstances manifesting extreme indifference to the value of human life and by causing bodily injury with a deadly weapon or other means likely to produce death or serious bodily harm.

¶37. Stevens cites *State v. Berryhill*, 703 So. 2d 250 (Miss. 1997), in which this Court held that a capital murder indictment predicated on burglary is required to state with specificity the underlying offense that comprises the burglary. Stevens states that in *Berryhill*, this Court held that the indictment was defective because it failed to state the elements of burglary in the indictment. Such is a distortion of the holding in *Berryhill*. In *Berryhill*, this Court observed that a capital murder charge that is predicated upon burglary must include notice of the crime comprising the burglary because burglary requires as an essential element the intent to commit another crime. *Id.* at 255-56. Without notice of the other crime, the accused cannot defend the charge against him. *Id.*

¶38. *Berryhill* would be instructive in the case at hand if the indictment against Stevens merely stated that Stevens killed Brown while engaged in the perpetration of a felony, without naming the underlying offense of aggravated assault. The indictment, however, names the underlying offense of aggravated assault. As observed in *Berryhill*, the elements of the underlying felony, burglary, contained underlying crimes. Aggravated assault, while it may be proved on different theories, contains no underlying crime of which a defendant must be apprized.

¶39. The record in this case indicates that Stevens was well informed of the State's theory of aggravated assault--Stevens had previously pled guilty to the aggravated assault of Patrick Holiday, and it was upon this underlying conviction that the manslaughter conviction was predicated. The transcript from the plea hearing was admitted into evidence. At the plea hearing, Stevens admitted that he committed the crime of aggravated assault upon Holiday and stated that he shot Holiday in the leg with a .22 caliber pistol. The trial court did not err in denying Stevens's motion to dismiss the indictment.

### III. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1.

¶40. Stevens argues that instruction S-1 should not have been granted because it did not require the jury to find that Stevens acted wilfully, as charged in the indictment. In reviewing allegedly erroneous instructions, this Court reviews the instructions as a whole to determine whether the jury was properly instructed. *Morgan v. State*, 741 So. 2d 246 (Miss. 1999) (citing *Willie v. State*, 585 So. 2d 660, 680 (Miss.

1991)). "This Court does not review jury instructions in isolation." ***Nicholson v. State***, 672 So. 2d 744, 752 (Miss. 1996) (citing ***Malone v. State***, 486 So. 2d 360, 365 (Miss. 1986)).

¶41. Again, the indictment stated:

> Glynn Stevens, acting in conjunction with others ... did wilfully, unlawfully and feloniously kill and slay Jason Brown, a human being, without malice, but not in necessary self-defense, while he, the said Glynn Stevens and others were and there engaged in the perpetration of the felony crime of aggravated assault of Patrick Holiday, a human being....

S-1 provided:

> The Court instructs the Jury that the killing of a human being without malice or deliberate design, while such other is engaged in the commission of aggravated assault, as defined elsewhere in these instructions, shall be manslaughter.

> The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.

> Therefore, if each of you believe from the evidence, beyond a reasonable doubt, that the defendant, Glynn Stevens, on or about April 28, 1995, in the First Judicial District of Hinds County, Mississippi, either alone or with another or others, was engaged in the commission of an aggravated assault as defined in other instructions of the Court, and each of you further believe from the evidence, beyond a reasonable doubt, that while the defendant, Glynn Stevens, was so engaged, he and another or he and others also so engaged killed Jason Brown, a human being, without authority of law, without malice or deliberate design, then in that event, the defendant, Glynn Stevens, is guilty of manslaughter and it is your sworn duty to so find.

¶42. Reviewing as a whole the instructions given to the jury, it is clear that the jury was not improperly instructed. Instruction D-6 instructed the jury that the prosecution must prove beyond a reasonable doubt "all of the elements of the crime with which [Stevens] is charged, including that he wilfully killed and slayed Jason Brown." Additionally, instruction S-4 stated that "any person wilfully aiding, assisting, encouraging, or doing any material act in furtherance of, or directly contributing to, the commission of a felony is an accessory or accomplice, and every person who is an accessory or accomplice to any felony, before or during the fact, is deemed and considered a principal, as if he had with his own hand committed the entire offense." In this assignment of error and the next, Stevens argues that because he was indicted as the principal, the jury could convict him only if it found that the bullet which killed Brown was actually fired by Stevens. This Court has stated that an aider and abettor may be properly indicted and tried as a principal. ***Crossley v. State***, 420 So. 2d 1376, 1381 (Miss. 1982) (citing ***Scales v. State***, 289 So. 2d 905 (Miss. 1974)). This argument is without merit.

¶43. Stevens also complains that S-1 required a finding that Stevens was "engaged in the commission of an aggravated assault" rather than an aggravated assault on Patrick Holiday. Stevens fails to recognize that, in defining aggravated assault, instruction S-3 requires that the jury find that the aggravated assault was committed upon Patrick Holiday.

¶44. Finally, Stevens asserts that the language of the indictment suggests that Stevens shot Brown, whereas

S-1 required a finding by the jury that "[Stevens] and another or [Stevens] and others" killed Brown. This argument is without merit. The indictment states that "Stevens, acting in conjunction with others," killed Brown.

¶45. Considering the instructions as a whole, this Court finds that the jury was properly instructed.

### IV. THE VERDICT OF THE JURY WAS UNSUPPORTED BY THE EVIDENCE, AND THE TRIAL COURT ERRED IN DENYING STEVENS'S PEREMPTORY INSTRUCTION AND MOTION FOR DIRECTED VERDICT.

Legal Sufficiency of the Evidence

¶46. The legal sufficiency of the State's evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction and a motion for a JNOV; the standard of review of each is essentially the same. *Ellis v. State*, 778 So. 2d 114, 117 (Miss. 2000) (citing *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989)). In addition to viewing the evidence in the light most favorable to the State, this Court must accept as true all the evidence which supports the guilty verdict without weighing the credibility of the evidence on appeal. *Id.* (citing *Davis v. State*, 568 So. 2d 277, 281 (Miss. 1990); *Malone v. State*, 486 So. 2d 360, 366 (Miss. 1986)). The prosecution receives the benefit of all favorable inferences that may reasonably be drawn from the evidence. *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987). This Court will reverse only where reasonable and fair-minded jurors could only find the accused not guilty. *Wetz v. State*, 503 So. 2d 803, 808 (Miss.1987).

¶47. Stevens argues that the verdict must be reversed because the evidence did not show that Stevens killed Brown. The evidence at trial showed that Stevens fired a .22 and that the projectile which killed Brown came from either a .380 or a 9 millimeter. As discussed previously, the jury was instructed that it could find Stevens guilty pursuant to accomplice liability, guilty as if he were a principal. Thus, even though the evidence showed that Stevens did not fire the shot that resulted in Brown's death, the jury could hold Stevens liable for Brown's death as an aider and abettor and return a guilty verdict. *See Vaughn v. State*, 712 So. 2d 721 (Miss.1998); *Crossley v. State*, 420 So. 2d 1376 (Miss. 1982).

¶48. Stevens also argues that no reasonable jury could find him guilty as an aider and abettor. Stevens states that there is no evidence that he incited, encouraged, or assisted the perpetrator in killing Brown. It is well settled that to aid and abet in the commission of a felony, one must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." *Vaughn*, 712 So.2d at 724 (quoting *Malone v. State*, 486 So. 2d 360, 363 (Miss. 1986)). Stevens argues that he was merely present at the scene of the crime and that mere presence is insufficient to convict him as an aider and abettor. *See Vaughn*, 712 So.2d at 724 (citing *Griffin v. State*, 293 So. 2d 810, 812 (Miss. 1974) (mere presence is insufficient)).

¶49. The trial court properly instructed the jury on these legal guidelines governing conviction as an aider and abettor in instructions S-4, S- 5, and D-3. Stevens was not merely present for the murder of Brown. Strahan, an eyewitness to the event, testified that Stevens fired his gun first. Strahan testified that once Stevens began shooting, Cavett started shooting as well. Strahan stated that before Stevens started shooting, Cavett did nothing to indicate that he was going to shoot. This testimony went undisputed. Again, under the applicable standard of review, the prosecution receives the benefit of all favorable inferences that may reasonably be drawn from the evidence. From Strahan's testimony, the jury could have reasonably

concluded Stevens's actions incited and encouraged the perpetrator in the commission of the crime. This assignment of error is without merit.

Weight of the Evidence

¶50. Stevens also argues that the trial court erred in denying his alternative motion for new trial. The motion for a new trial is addressed to the trial court's sound discretion. *May v. State*, 460 So. 2d 778, 781 (Miss. 1985) (citing *Neal v. State*, 451 So. 2d 743, 760 (Miss. 1984)). This Court will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. *Id.* (citing *Groseclose v. State*, 440 So. 2d 297 (Miss. 1983)).

¶51. Applying this standard to the evidence before the jury, affirmance on this assignment of error is required. The underlying crime of aggravated assault is supported by the overwhelming weight of the evidence. Strahan and Holiday both testified that Stevens shot at Holiday. In the transcript from Stevens's plea hearing on the aggravated assault charge, Stevens stated that he shot Holiday in the leg. Furthermore, the undisputed testimony of two eyewitnesses to the event showed that the shooting began when Stevens began firing his gun at Holiday. Though the evidence showed that Brown was not killed by a bullet from Stevens's gun, the weight of the evidence supported the finding that Stevens incited and encouraged the perpetrator in the commission of the crime charged. Such a conclusion by the jury was reasonable and not so contrary to the weight of the evidence that allowing it to stand would result in an unconscionable injustice.

¶52. The trial court correctly denied Stevens's request for a peremptory instruction as well as his subsequent motion for judgment of acquittal notwithstanding the verdict of the jury. Furthermore, on this record the trial judge acted well within his discretion when he denied Stevens's alternative motion for a new trial.

## V. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-5.

¶53. At trial, Stevens's theory of defense was that he shot Holiday in self-defense. There was no evidence presented at trial which indicated that either Holiday or Brown was armed. In fact, all evidence was to the contrary. The only testimony which might support a finding of self-defense was Strahan's statement that when Holiday approached the vehicle, Holiday had his shirttail hanging out. Stevens argues that the trial court erred in refusing instruction D-5, which stated:

> You, the jury, are not to hold Glynn Stevens to the same cool judgment which you are presently able to have. You must give him the benefit of doubt of all circumstances and the excitement in which he found himself at the time of the incident in this case.

¶54. The trial court did not deny a self-defense instruction altogether, but instead granted instruction D-19, which stated:

> If you find that Glynn Stevens reasonably believed that he, or any of his companions, were in apparent danger of imminent death or serious bodily harm by Patrick Holiday, then the shots he fired in the direction of Patrick Holiday were in necessary self defense, and you shall find him not guilty.

¶55. Where one jury instruction adequately covers the defendant's theory of self-defense, the trial court

may properly refuse to grant a second instruction on the grounds that it is redundant or cumulative. *Cook v. State*, 467 So. 2d 203, 210 (Miss. 1985); *Evans v. State*, 457 So. 2d 957, 959 (Miss.1984).

¶56. Stevens argues that without instruction D-5, the jury was not properly instructed to consider the circumstances existing at the time of the incident from his viewpoint. Stevens relies on *Windham v. State*, 91 Miss. 845, 852, 45 So. 861, 862 (1908), in which this Court held that the defendant was erroneously denied an instruction stating that the jury should not expect from the defendant the same cool and calm judgment they would presently possess, but instead that they should judge the defendant's acts by the facts and circumstances existing at the time of the incident. *See also Johnson v. State*, 42 So. 166 (Miss.1906) (same).

¶57. This Court addressed an identical argument in *Gossett v. State*, 660 So. 2d 1285, 1295 (Miss. 1995). In *Gossett*, the self-defense instruction given, like D-19 in the case at hand, instructed the jury that the defendant was entitled to the defense of self-defense if he had a reasonable apprehension of imminent danger. In *Gossett* this Court held that the self- defense instruction was a correct statement of the law on self-defense and that while the self-defense instruction did not specifically address the same point made by D-5 in the present case, the self-defense instruction accurately guided the jury on the law of self-defense. *Id.* Likewise, in the case at hand, instruction D-19 accurately guided the jury on the law of self-defense. This assignment of error is without merit.

## VI. THE TRIAL COURT ERRED IN THE GRANTING CONFLICTING JURY INSTRUCTIONS, S-1 AND D-6.

¶58. Stevens asserts that the trial court erred in giving conflicting jury instructions, S-1 and D-6. Stevens argues that the instructions are contradictory because S-1 did not require the jury to find that Stevens "wilfully" killed Brown, whereas D-6 did so require. Stevens's argument that instruction S-1 was improper because it did not contain the word "wilfully" has been previously addressed in Issue III. Again, considering the instructions as a whole, the jury was properly instructed. Furthermore, though Stevens objected at trial to the fact that S-1 did not contain the word "wilfully," as charged in the indictment, he raised no objection to any conflict between S-1 and D-6. "Errors based on the granting of an instruction will not be considered on appeal unless specific objections stating the grounds are made in the trial court." *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982) (citing *Collins v. State*, 368 So. 2d 212 (Miss. 1979)). Therefore, this assignment of error is procedurally barred and, alternatively, without merit.

## VII. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-18.

¶59. Stevens asserts that the trial court erred by denying instruction D-18, which stated:

> "Not Guilty" does not mean the same as "innocent." It does mean, however, that the prosecution has failed to prove, beyond a reasonable doubt, all the material elements of the crime of manslaughter.

Stevens argues that without D-18, the jurors were not informed as to the meaning of the terms presented to them in the jury instructions, specifically, the term "not guilty."

¶60. A similar instruction was rejected by the trial court in *Williams v. State*, 589 So. 2d 1278, 1279 (Miss. 1991). This Court denied Williams's assignment of error on appeal, stating that the burden of proof instructions and a presumption of innocence instruction granted by the trial court adequately informed the jury of the presumption of Williams's innocence and the State's burden of proof. *Id.* at 1279-80.

¶61. In the case sub judice, the court's instructions to the jury stated:

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his/her guilt beyond a reasonable doubt. The Defendant is not required to prove his/her innocence.

¶62. Additionally, Stevens requested and the trial court gave the following instructions:

You are bound, in deliberating upon this case, to give Glynn Stevens the benefit of every reasonable doubt of his guilty that arises out of the evidence or lack of evidence in this case. There is always a reasonable doubt of a defendant's guilt when the evidence simply makes it probable that he is guilty. Mere probability of guilt does not warrant your convicting Glynn Stevens. It is only when on the whole evidence you are able to say on your oaths, beyond a reasonable doubt, that Glynn Stevens is guilty that the law will permit you to find him guilty. You might be able to say that you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he is guilty, it is your sworn duty to find Glynn Stevens "Not Guilty."

* * *

For the prosecution to meet its burden of proving Glynn Stevens guilty beyond a reasonable doubt, the prosecution must prove each and every essential element of the offense charged beyond a reasonable doubt. If the State has failed to prove any one element of the offense charged beyond a reasonable doubt, you must find the Defendant, Glynn Stevens, not guilty.

¶63. As in *Williams*, the jury in the case at bar was told in bold and simple terms that Stevens was not required to prove his innocence and that the burden was on the State to prove him guilty beyond a reasonable doubt of the crime charged in the indictment before they could convict. "The trial court is not required to instruct the jury over and over on a principle of law." *Williams*, 589 So. 2d at 1280 (citing *Laney v. State*, 486 So. 2d 1242, 1246 (Miss. 1986)). The instructions, when read together, fully and fairly instructed the jury on the presumption of Stevens's innocence and the State's burden of proof.

### VIII. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A PHOTOGRAPH OF THE VICTIM.

¶64. Over Stevens's objection, the trial court allowed the prosecution to introduce a high school photograph of Brown taken before the shooting. Stevens claims that the photograph was inflammatory and cumulative as he had stipulated, prior to the introduction of the picture, to the identity of the victim. The record indicates that Stevens stipulated to the identity of the victim after the witness had been shown the photograph and had identified Brown as the victim, but prior to introduction of the photograph. This Court rejected this assignment of error when raised by Stevens in his prior appeal. *Stevens I*, 717 So. 2d at 313 (citing *Bullock v. State*, 391 So. 2d 601, 609 (Miss. 1980); *Bruce v. State*, 349 So. 2d 1068, 1071 (Miss. 1977)).

¶65. The admissibility of photographs rests within the sound discretion of trial judge. ***Jackson v. State***, 684 So. 2d 1213, 1230 (Miss.1996); ***Mackbee v. State***, 575 So. 2d 16, 31 (Miss. 1990). The fact that a photograph of the deceased might arouse the emotions of jurors does not of itself render it incompetent in evidence so long as introduction of the photograph serves some legitimate, evidentiary purpose. ***May v. State***, 199 So. 2d 635, 640 (Miss. 1967). This Court has held that a photograph of a victim may be admitted for purposes of identification. ***Noe v. State***, 616 So. 2d 298, 303 (Miss. 1993); ***Bullock v. State***, 391 So. 2d 601, 609 (Miss.1980).

¶66. Nevertheless, Stevens asserts that because he stipulated to the victim's identity prior to introduction of the photograph, its introduction was cumulative and, therefore, of no evidentiary purpose. The photograph was simply a high school photograph, not gruesome nor likely to inflame the emotions of the jurors. We find that any error in its admission did not rise the level of reversible error. *See* ***Bruce v. State***, 349 So. 2d 1068, 1071 (Miss. 1977).

## IX. THE TRIAL COURT ERRED IN ADMITTING THE AUTOPSY PHOTOGRAPH OF BROWN'S HEAD.

¶67. Stevens also argues that the trial court erred in admitting an autopsy photograph of the entry wound to Brown's head after an autopsy incision had been made. The photograph was introduced during the testimony of Dr. Rodrigo Galvez, the forensic pathologist who performed Brown's autopsy. As this Court observed in rejecting this assignment of error in ***Stevens I***, this Court has previously upheld the admission of similar and even more gruesome autopsy photographs to show the cause of death and/or the path of the fatal bullet. ***Stevens I***, 717 So. 2d at 313 (citing ***Davis v. State***, 660 So. 2d 1228, 1259 (Miss.1995); ***Mack v. State***, 650 So. 2d 1289, 1314 (Miss. 1994); ***Noe v. State***, 616 So. 2d 298, 303 (Miss. 1993); ***Alexander v. State***, 610 So. 2d 320, 338 (Miss. 1992); ***Porter v. State***, 564 So. 2d 31, 35 (Miss. 1990)).

¶68. Stevens again asserts that because he had already stipulated to the cause of death and because other evidence established the path of the fatal bullet, the autopsy photograph was cumulative and of no evidentiary value. A review of our case law reveals that "[t]he discretion of the trial judge 'runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.'" ***Morris v. State***, 777 So. 2d 16, 27 (Miss. 2001) (quoting ***Hart v. State***, 637 So. 2d 1329, 1335 (Miss. 1994)). We have stated that photographs contain probative value when they supplement or add clarity to witness' testimony. ***Gossett v. State***, 660 So. 2d 1285, 1292 (Miss.1995) (citing ***Hughes v. State***, 401 So. 2d 1100, 1106 (Miss.1981); ***Norman v. State***, 385 So. 2d 1298, 1303 (Miss.1980)). Rather than being merely cumulative, the autopsy photograph served to clarify the pathologist's clinical descriptions of the path of the fatal bullet. *See* ***Hart v. State***, 637 So. 2d 1329, 1336 (Miss. 1994) (affirming admission where pathologist utilized like photos during testimony). *See also* ***Turner v. State***, 573 So. 2d 657, 667 (Miss. 1990); ***Lanier v. State***, 533 So. 2d 473, 484 (Miss.1988) (both finding no abuse of discretion in admitting photographs used in conjunction with testimony by the physician who performed the autopsy). The trial court did not abuse its discretion in admitting the photograph.

## X. THE TRIAL COURT ERRED IN REFUSING TO ALLOW STEVENS TO QUESTION WITNESSES CONCERNING STRAHAN'S EXERCISING HIS RIGHT TO REMAIN SILENT.

¶69. Stevens argues that the trial court erred in prohibiting defense counsel to question Strahan regarding

Strahan's exercising his right to remain silent. Stevens states in his brief to this Court that the testimony he would have sought from Strahan was that Strahan remained silent after his arrest, and that Strahan chose to testify only because he was offered a plea bargain in return for his testifying against Stevens.

¶70. This assignment of error is without merit. Defense counsel was permitted to elicit the precise testimony sought on cross-examination of Strahan:

> Q: Now, I want to ask you about--you were charged with the aggravated assault of Patrick Holiday. Correct?
>
> A: Yes.
>
> Q: And you entered a plea bargain with the District Attorney's office, didn't you?
>
> A: Well--
>
> Q: Would you just answer the question, please?
>
> A: Yes.
>
> Q: And as part of that plea bargain, and again we're talking about the Patrick Holiday case where you were charged with aggravated assault, part of the agreement was that they would remand that case against [sic] to the files or not prosecute that case against you if you agreed to testify against Glynn Stevens. Correct?
>
> A: No.
>
> Q: Tell us, then.
>
> A: They came to me after--I wanted to tell everybody the truth about the matter, what had happened, and I offered them my statement.
>
> Q: **But prior to that you had not given anybody any statement, had you?**
>
> A: **No.**
>
> Q: **And isn't it true you agreed with the District Attorney, whoever made the offer--I'm not asking you that--but you entered an agreement with the District Attorney's office that if you testified against Glynn that the charge against you as far as the aggravated assault on Patrick Holiday would not be prosecuted or would be dropped. Correct?**
>
> A: **That was the plea.**

(emphasis added). This assignment of error is moot.

### XI. THE TRIAL COURT ERRED IN REFUSING TO STRIKE TESTIMONY CONCERNING THE BULLET RECOVERED FROM HOLIDAY'S LEG.

¶71. On direct examination, the prosecutor asked Holiday what kind of bullet was recovered from his leg. Holiday responded, "They said it was a .22." Defense counsel objected on the basis of hearsay. The trial

court sustained the objection, but denied Stevens's request that the answer be stricken from the record. On appeal, Stevens argues that the trial court's refusal to strike the answer from the record amounts to reversible error.

¶72. Any error here was harmless in light of the amount of evidence properly before the jury regarding Stevens's alleged aggravated assault of Holiday. The undisputed testimony of two eyewitnesses to the incident, Holiday and Strahan, indicated that Stevens fired his gun at Holiday. Furthermore, the record includes Stevens's guilty plea to the aggravated assault of Holiday in which Stevens stated that he shot Holiday. Any error here is harmless beyond a reasonable doubt in light of the overwhelming weight of the evidence against Stevens.

## CONCLUSION

¶73. For these reasons, the judgment of the Hinds County Circuit Court is affirmed.

¶74. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF 20 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. GRAVES, J., NOT PARTICIPATING.**

1. Felonies enumerated in Miss.Code Ann. § 97-3-19(2)(e) and (f) are: rape, burglary, kidnapping, arson, robbery sexual battery, unnatural intercourse with any child under the age of 12, nonconsensual unnatural intercourse with mankind, and abuse and/or battery of a child.