ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Newton County Circuit Court found William Edward Snowden guilty of aggravated assault. The circuit court sentenced Snow-den to twenty years in the custody of the Mississippi Department of Corrections with fifteen years suspended and five years to serve. Snowden appeals and raises five issues. However, we find merit to one of Snowden’s issues. Because that issue is outcome determinative, his remaining four issues are moot. In particular, we find that the circuit court erred by allowing the prosecution to proceed on an indictment that specifically charged Snow-den with aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a) (Rev.2006) when the indictment did not include all of the essential elements of a conviction under that provision. Therefore, we reverse the circuit court’s judgment of conviction for aggravated assault and vacate Snowden’s sentence of twenty years in the custody of the MDOC with fifteen years suspended and five years to serve. But because the jury inherently found Snowden guilty of simple assault, we remand this matter to the circuit court so it can sentence Snowden accordingly.
FACTS AND PROCEDURAL HISTORY
¶ 2. During February 2011, Nelson Smith and other members of a church outreach group provided rides home for people who needed rides home after celebrating Mardi Gras in the vicinity of Meri-dan, Mississippi. After Smith stopped providing rides to others, he drove west on 1-20 on his way to his home in Chunky, Mississippi. At approximately 12:45 a.m. *1253 on February 27, 2011, Smith got off of I-20 at the Chunky exit ramp. When he drove onto the exit ramp, he noticed a car driving “up behind [him] real fast.” Smith thought that “something’s going on with this person, because [he] was driving really crazy.” Smith yielded the exit ramp to the driver behind him. Specifically, Smith moved left off of the exit ramp. The car behind Smith drove to the end of the exit ramp and turned right onto “Chunky-Duffy Road.”
¶ B. As soon as Smith moved back onto the exit ramp, a white pickup truck drove behind him and let him into traffic. When Smith got to the end of the exit ramp, the driver of the white pickup truck passed him and turned right onto Chunky-Duffy Road. In other words, the driver of the white pickup truck went the same direction as the driver in the first car. According to Smith, the driver of the white pickup truck “just took off’ after he passed Smith.
¶4. Smith rolled down his window and proceeded in the same direction as the other two vehicles. A short distance later, Smith noticed that the white pickup truck had driven halfway down a driveway to a house on the left. Smith thought the driver of the white pickup truck was lost. As Smith drove past the driveway, he heard what he described as “three pops.” Smith first thought the sounds had come from his own vehicle. According to Smith, his right arm began “throbbing and blood start[ed] gushing out of [his] arm.” Smith realized that he had been shot. Because he was less than two miles from his own home, Smith drove there rather than a hospital. Smith’s wife drove him to Rush Hospital in Meridian.
¶ 5. Deputy Jeremy Pinson of the Newton County Sheriffs Department was dispatched to Rush Hospital. Just before 2:00 a.m., Deputy Pinson spoke to Smith. Smith explained that he had been driving past a house on Chunky-Duffy Road just north of the exit off of 1-20 when he was shot in the upper part of his right arm. Shortly after he interviewed Smith, Deputy Pinson went to the house that Smith described. Snowden lived in the house with his wife and stepson. Deputy Pinson explained that he was investigating a report that someone had been shot. Snow-den admitted that he was responsible for the gunshots that occurred earlier that night. According to Snowden, he fired warning shots from a .22 caliber rifle because his stepson, Chris McCans, had been pursued by unidentified people as McCans was driving home from work. Snowden explained that he had been trying to make his stepson’s pursuers leave the property.
¶ 6. After speaking to Deputy Pinson at Rush Hospital, Smith had been transferred to University Medical Center in Jackson, Mississippi, where he underwent exploratory surgery to determine the significance of the damage to his arm. Smith was discharged later that day. Deputy Pinson called Smith while Smith was riding home from Jackson. Deputy Pinson relayed Snowden’s claim that he had been firing warning shots because two people had chased his stepson home. Smith initially said he did not want to press charges against Snowden, but Smith later changed his mind.[1]
¶ 7. On June 5, 2012, Snowden was indicted and charged with aggravated assault. Specifically, the indictment stated:
Snowden ... did willfully, unlawfully, [and] feloniously cause bodily injury to *1254 ... Smith ... knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life with a deadly weapon, to-wit: a rifle, by shooting ... Smith with [the] rifle, ... being a means likely to produce death or serious bodily harm, contrary to and in violation of [Mississippi Code Annotated sjection 97-3-7(2)(a) [ (Rev. 2006) ].
(Emphasis added). On the date of the crime and the date the indictment was filed,[2] section 97-3-7(2)(a) provided, “A person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]” (Emphasis added). Mississippi Code Annotated section 97-3-7(2)(b) (Rev.2006) provided that “[a] person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” (Emphasis added). Snowden filed two pretrial motions to dismiss the indictment. Snow-den argued that the indictment was duplicitous because it attempted to charge him with both aggravated assault and simple assault. Snowden also argued that the indictment was fatally flawed because it attempted to charge him with some blended form of aggravated assault that is cobbled together with incomplete aspects of both section 97-3-7(2)(a) and section 97-3-7(2)(b). However, the circuit court overruled both of Snowden’s motions to dismiss the indictment.
¶ 8. At trial, the prosecution called Smith and Deputy Pinson as witnesses. After the prosecution rested its case-in-chief, Snowden called McCans as his first witness. McCans testified that the night Smith was shot, McCans had been working at a restaurant in Meridian. McCans stopped at a gas station on his way home. According to McCans, while he was at the gas station, two men in a white pickup truck aimed a laser pointer at him. McCans left the gas station. The two men in the white pickup truck followed him on the interstate, despite the fact that McCans drove approximately ninety to one hundred miles per hour. According to McCans:
[O]nce I got to the Chunky exit, there was a[n] eighteen wheeler in my way, so I couldn’t get off right away, and as I slowed down, they pulled up on the left-hand side of me and struck my window with a — some—a long metal pole, it looked like. Something like that. And at that time, I just took off off the exit, around the vehicle, and headed toward my driveway.
McCans encountered Smith’s car shortly after his pursuers hit his window with a “metal pole.” McCans testified that he used his cellular phone to call his mother, Elayne Snowden, while he was being chased. Elayne corroborated McCans’s testimony that he called her while he was being chased. Elayne further testified that her husband, Snowden, went outside when McCans pulled into the driveway, and Snowden “fired ... warning shots.” *1255 According to Elayne, she saw at least one of the occupants of the white pickup truck fire a weapon.
¶ 9. Snowden also testified. Snowden explained that he “had to do something to protect [his] family.” According to Snow-den, he “just fired warning shots and that was it.” Snowden elaborated that he “[j]ust pointed the rifle out and pulled the trigger.” Snowden testified that his last warning shot was a misfire. He speculated that Smith could have been hit by that shot. Snowden went on to testify that he did not intend to shoot Smith or anyone else, and he was “[v]ery sorry that it happened.” Snowden rested after he testified, and the prosecution finally rested.
¶ 10. During the conference on jury instructions, Snowden objected to the following jury instruction, which was designated as jury instruction S-l:
The [c]ourt instructs the [j]ury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, ... Snowden, did willfully, unlawfully, [and] feloniously cause bodily injury to Nelson Smith, a human being, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life with a deadly weapon, to-wit: a rifle, by shooting ... Nelson Smith with [the] rifle, ... being [a] means likely to produce death or serious bodily harm, then it is your duty to find [Snowden] guilty as charged.
Snowden argued that jury instruction S-l did not adequately describe a violation of section 97 — 3—7(2)(a), which requires proof of “serious bodily injury” rather than “bodily injury.” Snowden also argued that jury instruction S-l was improper because it included language that pertained to a conviction for aggravated assault under section 97 — 3—7(2)(b). However, the circuit court found no merit to Snowden’s arguments and gave jury instruction S-l as written. The jury was not instructed that it had to find that Snowden caused Smith serious bodily injury. The jury found Snowden guilty of aggravated assault. Snowden appeals.
ANALYSIS
¶ 11. Snowden claims the circuit court erred when it allowed the prosecution to proceed on a defective indictment. According to Snowden, the indictment did not adequately charge him with aggravated assault under section 97-3-7(2)(a). “The issue of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court.” Russell v. State, 924 So.2d 604, 607 (¶ 3) (Miss.Ct.App.2006). “As the issue involves a question of law, this Court applies a de novo standard of review.” Id.
¶ 12. The indictment against Snowden states:
Snowden ... did willfully, unlawfully, [and] feloniously cause bodily injury to ... Smith ... knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life with a deadly weapon, to-wit: a rifle, by shooting ... Smith with [the] rifle, ... being a means likely to produce death or serious bodily harm, contrary to and in violation of [Mississippi- Code Annotated s]ection 97 — 3—7(2)(a) [ (Rev. 2006) ].
(Emphasis added). As previously mentioned, at the time that Snowden was indicted, section 97-3-7(2)(a) provided that “[a] person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]” *1256 (Emphasis added). The indictment did not accuse Snowden of causing serious bodily injury to Smith. And through jury instruction S-l, the circuit court instructed the jury that it could find Smith guilty of aggravated assault if it found that Snow-den “willfully, unlawfully, [and] feloniously cause[d] bodily injury to ... Smith ... knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life with a deadly weapon.”
¶ 13. When Snowden was indicted, section 97-3-7(2)(b) provided that “[a] person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” (Emphasis added). But Snowden was specifically indicted under section 97-3-7(2)(a). The indictment did not charge him with aggravated assault under section 97-3-7(2)(b).
¶ 14. In Stevens v. State, 808 So.2d 908, 920 (¶ 36) (Miss.2002), a defendant claimed that an indictment for aggravated assault was fatally defective because it did not specifically accuse him of violating subsection (2)(a) or (2)(b) of section 97-3-7. The Mississippi Supreme Court held that “it necessarily follows that [Stevens] was charged under both subsections” of section 97-3-7(2). Id. But in this case, the prosecution specifically indicted Snowden under section 97-3-7(2)(a). Consequently, the prosecution was obligated to prove that Snowden caused “serious bodily injury ... purposely, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]” Miss.Code Ann. § 97-3-7(2)(a).
¶ 15. This Court has previously found that a circuit court did not commit plain error when it allowed a defendant to be convicted of aggravated assault under an indictment that blended language from section 97-3-7(2)(a) and section 97-3-7(2)(b). Johnson v. State, 910 So.2d 1174, 1180 (¶ 20) (Miss.Ct.App.2005). In Johnson, this Court held that the defendant’s conduct “plainly, clearly, and obviously would qualify as aggravated assault under either” section 97-3-7(2)(a) or section 97-3-7(2)(b). Johnson, 910 So.2d at 1179 (¶ 20). ‘Yet, even if there was some doubt about the particular subsection of [section] 97-3-7(2) that was intended to be covered by the indictment, ... our supreme court has held that [section] 97-3-7(2) may be read to cover a ‘considerable latitude’ ” of varying factual situations. Johnson, 910 So.2d at 1180 (¶ 20) (citing Stevens v. State, 808 So.2d 908, 920 (¶ 35) (Miss.2002)). Ultimately, this Court relied on Stevens and held that “the blending of the subsections of [section 97-3-7(2) ] is not necessarily a defect and in this case does not warrant reversal.” Johnson, 910 So.2d at 1180 (¶ 20).
¶ 16. However, this case is distinguishable from Johnson. In this case, Snowden was specifically accused of aggravated assault under section 97-3-7(2)(a). But Snowden was only accused of causing “bodily injury” to Smith. Section 97-3-7(2)(a) required proof of “serious bodily injury.” The Mississippi Supreme Court “has held that an indictment based upon a statutory offense must charge all of the essential elements of the statutory crime and is void for failure to do so.” Spears v. State, 253 Miss. 108, 116, 175 So.2d 158, 161-62 (1965). The jury was instructed that it could find Snowden guilty of aggravated assault if it found that Snowden caused Smith any “bodily injury.” But the jury never found that Snowden caused Smith “serious bodily injury.”
¶ 17. The dissent relies on White v. State, 958 So.2d 241, 244 (¶ 10) (Miss.Ct.App.2007), and Johnson v. State, 94 So.3d *1257 1209, 1215 (¶¶ 26-29) (Miss.Ct.App.2011), to argue for its conclusions that (1) the indictment charged Snowden under both section 97 — 3—Y(2)(a) and 97 — 3—7(2)(b), and (2) the jury inherently found Snowden guilty of aggravated assault under section 97 — 3—7(2)(b). With utmost respect for the dissent, we disagree. White is of no moment in this case, because it is irrelevant whether Snowden could have somehow derived that when the indictment specifically charged him under section 97 — 3—7(2)(a), the indictment really meant to charge him under section 97 — 3—7(2)(b) as well.
¶ 18. And this case is distinguishable from Johnson in that it is legally impossible to affirm Snowden’s conviction for aggravated assault under either section 97-3 — 7(2)(a) or section 97 — 3—7 (2) (b). It is accurate that “bodily injury” rather than “serious bodily injury” is one of the essential elements of a conviction under section 97 — 3—7(2)(b). But under section 97-3-7(2)(b), the prosecution was also obligated to present evidence beyond a reasonable doubt that Snowden “purposely or knowingly” shot at either Snowden or the two people who were chasing McCans. The dissent argues that the jury could have inferred that Snowden intended to shoot the occupants of the white pickup truck. The dissent’s reasoning is based on the assumptions that: (1) Snowden “wanted to be ready for his stepson’s pursuers”; (2) Snowden fired three shots, which the majority assumes were in the direction of the occupants of the pickup truck; and (3) Snowden could have seen Smith’s headlights. But there is absolutely no evidence that Snowden fired directly at the occupants of the white pickup truck. For whatever reason, the occupants of the white pickup truck were never identified. They did not even testify. No witness testified that Snowden fired even one shot directly at them. Furthermore, there was no evidence that Snowden had an unobstructed view of approaching traffic on Chunky-Duffy Road. There was no evidence that Smith and the occupants of the white pickup truck would have been in the same line of fire. That is, there is no evidence that Snowden was aiming directly at the occupants of the white pickup truck, and there was no evidence that Smith would have been in the line of fire if Snowden had been aiming at the occupants of the white pickup truck. The jury may reach inferences based on the evidence, but the dissent cites no authority to support the conclusion that the jury may assume or infer facts that are not supported by the evidence. Speculation is the only path available for the jury to possibly infer from this evidence that Snowden “purposefully or knowingly” attempted to shoot the two unknown occupants of the white pickup truck.
¶ 19. During cross-examination, Deputy Pinson testified that Snowden never told him where he aimed in relation to the two men who were in the pickup truck that pulled into Snowden’s driveway. Deputy Pinson also testified that Snowden did not say that he intended to shoot Smith. According to Deputy Pinson, Snowden merely said that he intended to “scare off’ the people who had been chasing McCans. Snowden testified that he intended to fire “warning shots,” and he “was not firing at anybody.” During cross-examination, Snowden reiterated that he “wasn’t firing at” the occupants of the pickup truck or Smith. When the prosecution asked Snowden whether he was “just shooting at a vehicle,” Snowden responded that he “wasn’t shoot[ing] at anybody or anything.” Even assuming all evidence and inferences favorable to the prosecution are true, there was simply no evidence that Snowden purposely, knowingly, or intentionally shot at the occupants of the pickup truck or Smith. It follows that there can *1258 be no transfer of intent to Smith when there is no evidence that Snowden intended to shoot the occupants of the pickup truck. Stated differently, if there was no evidence of specific intent, then logically there can be no transferred intent. Snow-den specifically testified that he did not intentionally shoot Smith and he was “[v]ery sorry that it happened.”
¶ 20. The dissent finds that the prosecution clearly pursued a transferred-intent theory based on the concept that Snowden intended to shoot the occupants of the white pickup truck. The basis for the dissent’s conclusion is that the prosecution obtained a transferred-intent instruction. However, immediately after the prosecution obtained that instruction, it based its closing argument on the theory that Snow-den was guilty of aggravated assault because he acted recklessly when he fired the shot that struck Smith. During the prosecution’s closing argument, the prosecutor said, “I never said to you at any time that Mr. Snowden intentionally shot, knowing it was ... Smith. I never have argued that, because that’s not the case.” The prosecutor went on to argue that “Snowden’s actions were those that you would have to consider reckless and under a circumstance that would show it was an extreme indifference to human life. And that’s what resulted in his shooting the gun and hitting ... Smith.” When the prosecutor replied to Snowden’s closing argument, the prosecutor again said “that was a reckless act.” The prosecutor’s final statement to the jury was that “Snowden acted in such a manner that it was reckless and it was in complete indifference to the [value of] human life.” In other words, the prosecution did not claim nor attempt to prove that Snowden purposefully or knowingly caused bodily injury to Smith, an innocent motorist who unfortunately happened to be in the wrong place at the wrong time. Snowden and Smith did not know one another. The prosecution’s theory was that Snowden either carelessly or negligently fired his .22 caliber rifle over the heads of the two occupants of the white pickup truck in an effort to scare them away from his stepson, but one of the bullets unintentionally struck Smith, a passing motorist, in the arm. Stated differently, the prosecution claimed that Snowden acted “recklessly under circumstances manifesting extreme indifference to the value of human life.” A conviction for aggravated assault under section 97-3-7(2)(b) where a deadly weapon is used to cause a bodily injury does not provide that a defendant’s conduct can be reckless. Instead, such conduct must be purposeful or knowing. Consequently, even if the indictment is legally sufficient to charge Snow-den with aggravated assault under section 97 — 3—7(2)(b), the undisputed proof is insufficient to warrant a conviction under that subsection.
¶ 21. Notwithstanding the complete absence of evidence that Snowden knowingly, purposely, or intentionally shot Smith, the jury inherently found Snowden guilty of simple assault. “[S]imple assault has been deemed a lesser-included[ ]offense of the crime of aggravated assault.” Odom v. State, 767 So.2d 242, 245 (¶ 10) (Miss.Ct.App.2000). Mississippi Code Annotated section 97-3-7(1) (Rev.2006) provides that “[a] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.” (Emphasis added). Through jury instruction S-l, the jury found that Snowden acted recklessly when he caused Smith’s bodily injury. During the hearing on Snowden’s pretrial motion to dismiss the indictment, Snowden’s attorney argued *1259 that Snowden should only be prosecuted for simple assault based on language of the indictment. In his appellate brief, Snow-den concedes that he was guilty of simple assault and he should be sentenced accordingly. We agree.
¶ 22. Utilizing the direct-remand rule, an appellate court may remand a case to the trial court for sentencing on a lesser-included offense where the greater offense was not proved, but the elements of the lesser-included offense were sufficiently met. Shields v. State, 722 So.2d 584, 587 (¶ 7) (Miss.1998) (citation omitted). The supreme court explained that the logic behind the direct-remand rule was that “guilt of a true lesser[-]ineluded offense is implicitly found in the jury’s verdict of guilt on the greater offense.” Id. (citations omitted). “The direct-remand rule has also been followed in numerous other state and federal courts, with varying rationales, [based on] either statut[e], rule ... [,] or inherent power.” Id. at 585 (¶ 8). Therefore, we reverse the circuit court’s judgment of conviction for aggravated assault, and vacate Snowden’s sentence for that charge. However, we remand this matter to the circuit court with instructions to sentence Snowden for simple assault. Based on our resolution of this issue, Snowden’s remaining issues are moot.
¶ 23. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT IS REVERSED; THE SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS TO SERVE IS VACATED; AND THIS CASE IS REMANDED FOR RESENTENCING ON THE LESSER-INCLUDED OFFENSE OF SIMPLE ASSAULT IN ACCORDANCE WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
GRIFFIS, P.J., ISHEE, FAIR AND JAMES, JJ., CONCUR. BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND CARLTON, J.

. Smith thought that his health insurance provider would not pay the costs of his treatment if he did not press charges against Snowden. Smith never explained why he came to that conclusion.

. Effective July 1, 2012, the Mississippi Legislature amended section 97-3-7(2)(a), which now provides, in pertinent part:
A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....”
Miss.Code Ann. § 97-3-7(2)(a) (Supp.2013).